Robert Serafin, PRO SE
460 Center Street, # 6995
Moraga, CA 94570
T: (415) 350-9900
bobby8020@yahoo.com

UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

| | |
|---|---|
| ROBERT SERAFIN<br><br>*Plaintiff*<br><br>v.<br><br>REALMARK HOLDINGS, LLC,<br>a California Limited Liability Company;<br>MADELINE SERAFIN, an individual;<br>REALMARK INC., a California "C"<br>Corporation;<br><br>DOES 1-10, inclusive<br><br>*Defendants* | CASE NO. 5:23-cv-03275 PCP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Filed Concurrently With Declaration of Robert Serafin in Support Thereof And Proposed Order]**<br><br>Date:  February 22, 2024<br>Time: 10AM<br>Court Room: 8 4th Floor<br>Judge: Hon. P. Casey Pitts<br>Date Action Filed: June 30, 2023<br>Trial Date: None Assigned |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 22, 2024, at 10:00 a.m., or as soon as the matter may be heard, in the courtroom of the Honorable P. Casey Pitts at the United States District Court for the Northern District of California, 280 South 1st Street, in San Jose, California, Plaintiff Robert Serafin  shall move and hereby does move the Court for a Preliminary Injunction against Defendants Realmark Holdings LLC, Realmark Inc. and Madeline Serafin pursuant to Federal

Rule of Civil Procedure 65 and Civil Local Rule 7-2. As set forth in the Proposed Order submitted with this motion, Plaintiff seeks an order enjoining Defendants, their owners, officers, directors, employees, agents, servants, representatives, affiliates, related entities, and all other persons, firms, or corporations acting in concert from participation or engaging in in any and all acts in connection with the provision of real estate brokerage, project management and related services that constitute trademark infringement, counterfeiting, dilution, false designation of origin, cybersquatting, or unfair competition under the laws of the United States and the State of California and that would damage or injure Plaintiff's interests or dilute the value of Plaintiff's trademarks and equity and shares in Realmark Inc.

This Motion is made on the grounds that: (1) Plaintiff will be irreparably harmed if Defendants are not enjoined from infringing the "Realmark" mark; (2) Plaintiff is likely to succeed on the merits of the claims asserted in his Complaint; (3) the balance of hardships tips strongly in favor of Plaintiff; and (4) the public interest overwhelmingly supports the issuance of a preliminary injunction. Plaintiffs' motion is based on this notice of motion and motion; the following memorandum of points and authorities; the declaration of Robert Serafin; all matters of which the Court may take judicial notice; all other pleadings on file in this action; and any other written or oral argument that Plaintiff may present to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Motion for Preliminary Injunction is made on the grounds that Defendants have, and continue to infringe on the "Realmark" mark, domain name, and website usurped from Realmark, Inc. (Dkt. No. 1 at ¶ 14, 15, 16, 86). In addition, Defendants' ongoing and continued use of the domain name infringe Plaintiff's rights under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), and constitute trademark infringement and unfair competition.

Plaintiff has a strong likelihood of prevailing on its claims because Defendants' use of the "Realmark" mark is likely to cause confusion for consumers and cause irreparable harm to Plaintiff. Defendants through their infringement and unfair competition have, and continue to divert millions of dollars of revenue from Realmark Inc. (controlled by its CEO Ms. Serafin), to Realmark Holdings LLC, and to Ms. Serafin personally, all to Plaintiff's detriment because Plaintiff is 50% shareholder in Realmark Inc. but has no interest in Realmark Holdings LLC. The public interest and balance of equities and hardships also favor granting preliminary injunctive relief. As set forth more fully below, Plaintiff respectfully ask this Court to grant it a preliminary injunction.

## II.    STATEMENT OF FACTS

Realmark Inc. was formed and incorporated as a California "C" corporation on October 9, 2014, jointly by Plaintiff and Defendant Ms. Serafin (Dkt.No.1 Exhibit L and Decl. of Robert Serafin ¶ 2). Plaintiff and Defendant Ms. Serafin are each 50% shareholders in Realmark Inc. The mark "Realmark" has been associated with Realmark, Inc. since October 2014 and has been continuously used in commerce ever since. Realmark Inc. provides real estate management, asset management, project management, and a range of related services, and has since 2014 developed substantial goodwill and recognition in its mark in connection with the provision of real estate and related services in the greater San Francisco Bay Area. (Decl. of Robert Serafin ¶ 3, 4, 5)

On December 30, 2022, Ms. Serafin and certain Doe Defendants organized and established a new entity with the California Secretary of State and named it Realmark Holdings LLC (Dkt.No.1 Exhibit I). The purpose of this action was to facilitate the violation of the Realmark Inc. trademarks; improperly and unfairly compete with Realmark Inc.; divert millions of dollars of revenue and business opportunities from Realmark Inc. to Realmark Holdings LLC and to Ms. Serafin personally; and to fraudulently convey corporate cash and assets from Realmark Inc. to

Realmark Holdings LLC, and to Ms. Serafin personally. The new identically named entity is wholly owned by Ms. Serafin who is its sole shareholder and Managing Member. Realmark Holdings LLC is not an owner of the trademark "Realmark" and has no rights whatsoever to the trademark "Realmark" (Decl. of Robert Serafin ¶ 6, 7).

Upon formation Realmark Holdings LLC, immediately took over the website belonging to Realmark Inc. (http://www.realmark-commercial.com) (Dkt No. 1 Exhibit K), converted it to the website for Realmark Holdings LLC (Dkt No. 1 Exhibit A) and began offering real estate and related services that are either identical, similar to, or overlap with, those services offered by Realmark Inc. (Dkt No.1 Exhibit B and Declaration of Robert Serafin ¶ 8).

Between its establishment in 2014, and until the commencement of Defendants' infringements and unfair competition, Realmark Inc. generated large revenues and was a thriving and growing business with a lengthy list of clients which included major multinational corporations. Defendants' express purpose for their infringements was deceive current and future Realmark Inc. clients. This had the effect of depriving Realmark Inc. of all of its current (and future) clients by fraudulently inducing them to become clients of Realmark Holdings LLC, or of Ms. Serafin personally based on her leadership and control of both entities (Declaration of Robert Serafin ¶ 9, 10).

[Plaintiff submitted multiple formal requests for inspection of Realmark Inc. corporate records to its CEO Defendant Ms. Serafin and to Realmark Inc. attorneys pursuant to the provisions of Chapter 16 of the California Corporations Code on at least three separate occasions, and most recently on November, 2023, (Declaration of Robert Serafin ¶ 11 and Exhibit A) but Defendants or their attorneys did not respond to any of the requests and produced no records].

Realmark Holdings LLC's use of the "Realmark" mark is for the willful purpose of causing confusion and mistake, and to deceive the relevant public, and specifically current and

prospective Realmark Inc. clients and customers into believing Realmark LLC and Realmark Inc. are one and the same entity (Declaration of Robert Serafin Exhibit ¶ 12).

Realmark Holdings LLC's use of Realmark Inc.'s Mark is certain to confuse, cause mistake, and deceive the relevant public into believing that Realmark LLC is in some manner related to or affiliated with Realmark Inc., since the name is not simply similar, it is *identical*. It is self-evident that two companies both named "Realmark" and both providing real estate management, asset management, project management, and a range of related services, will confuse and deceive. The relevant public is unlikely to be able to distinguish between the two.

Further, Realmark Holdings LLC has, as described above, co-opted the website used by Realmark Inc. since 2014. Therefore any former, current, or prospective client of Realmark Inc. visiting the website would undoubtedly believe Realmark Inc. and Realmark Holdings LLC are the same entity, all to Plaintiff's detriment. (Declaration of Robert Serafin Exhibit ¶ 12).

### III.  ARGUMENT

**A.     LEGAL STANDARD**

The purpose of a preliminary injunction is "to preserve the status quo without adjudicating the merits," and, as such, a court may grant such relief where doing so would "preserve the relative positions of the parties until a trial on the merits can be held." *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978); *see also University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Fed. R. Civ. P. 65. When deciding whether a preliminary injunction is appropriate, courts apply a four-factor balancing test that considers whether the movant has shown "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def Council, Inc., 555 U.S. 7, 20 (2008);

see also *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016). Where a likelihood of success on a trademark infringement claim is shown, irreparable harm is presumed. 15 U.S.C. § 1116(a). Under the Ninth Circuit's "serious questions" standard, a preliminary injunction should issue where the plaintiff shows there are "serious questions going to the merits" and that the "balance of hardships tips sharply in the plaintiff's favor," where the other two prongs are also satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). A court may rely on many forms of evidence in its analysis. E.g., *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

**B.     A PRELIMINARY INJUNCTION IS WARRANTED AND NECESSARY**

Plaintiff satisfies each of the four factors evaluated for injunctive relief.

**1.     Plaintiff is Likely to Succeed on the on the Merits of It's Claims**

Plaintiff is substantially likely to succeed on the merits of its claims for trademark infringement under the Lanham Act and California law. A plaintiff satisfies the first factor by "demonstrat[ing] a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105–06 (9th Cir. 2012) (internal quotation marks omitted). To prevail on a claim for federal and common law trademark infringement, the plaintiff must show that (1) its mark is valid and protectable, and (2) use of the mark by the defendant is likely to cause confusion. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); 15 U.S.C. § 1114(1)(a) (registered marks); 15 U.S.C. § 1125(a) (unregistered marks); Cal. Bus. & Prof. Code § 14272 (following federal law); also see 15 U.S.C. § 1125(a)(1)(A); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Some factors "are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield*, 174 F.3d at 1054. Here Plaintiff satisfies both prongs.

**(a)     The Realmark Mark is Valid and Protectable**

Trade names and unregistered marks are entitled to protection against confusing or misleading uses once they have been used in commerce. 15 U.S.C. §1125(a); *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225-26 (9th Cir. 2008). The "Realmark" mark is a strong, valid and protectable trademark because of the consistent and nationwide use of that mark in connection with providing real estate brokerage and management, asset management, project management, and a range of related services since 2014 (Decl. Robert Serafin ¶ 13). Therefore, Plaintiff has satisfied the first element of its trademark infringement claims.

**(b)     Defendants' Use of the "Realmark" Mark is Likely to Cause Confusion**

To determine whether there is a likelihood of confusion, courts in the Ninth Circuit address the following *Sleekcraft* factors: (1) the similarity of the marks; (2) the relatedness of the two companies' goods or services; (3) the marketing channels used; (4) the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by the purchaser. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792 (9th Cir. 2003)).

The first three factors, *i.e.* the similarity of the marks, the relatedness of the goods or services, and the use of common marketing channels, constitute "the controlling troika in the *Sleekcraft* analysis." *GoTo.com v. Disney,* 202 F.3d 1199 at 1205. In the present case, (1) the "Realmark" marks used by Defendants are *identical* - consumers are unlikely to make any distinction between "Realmark Inc." and "Realmark Holdings LLC" (2) the Realmark Inc. and Realmark Holdings LLC names and marks are both used in connection with providing real estate and related services nationwide; and (3) Realmark Holdings LLC and Ms. Serafin are marketing

their services through the same channels as Realmark Inc. (e.g. through a website, verbal communications and through repeat customers) (Decl. of Robert Serafin ¶ 14). "The greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1144 (9th Cir.2002). In the instant case the name and marks are not merely similar, they are *identical*. With regard to the fourth *Sleekcraft* factor, the strength of the mark; the "Realmark" mark, has been associated with Realmark Inc. since October 2014 and has been continuously used in commerce ever since. The "Realmark" mark is exceptionally strong in San Francisco Bay Area real estate community.

For the fifth and sixth *Sleekcraft* factors, the Defendants' intent in selecting its mark, and evidence of actual confusion, weighs heavily in Plaintiff's favor. Here there is no question Ms. Serafin working with Doe Defendants chose to incorporate a new *identically* named entity (Realmark Holdings LLC) (Dkt No. 1 Exhibit A) to capitalize on Realmark Inc.'s name, reputation, good will, and valuable client list. Furthermore, Defendants Realmark Holdings LLC, and Ms. Serafin have, and continue to falsely represent that they have the right to control the use of the mark "Realmark", thereby engendering confusion (Decl. of Robert Serafin ¶ 15).

Ms. Serafin used her position as both the CEO of Realmark Inc. and the Managing Member of Realmark Holdings LLC, (Dkt. No. 1 Exhibits I and O) to willfully create even further confusion by presenting the false impression of affiliation, connection, or association between the two entities. Generating further deliberate confusion, Ms. Serafin continues to use the same California Department of Real Estate license numbers under which Realmark Inc. has operated since 2014 in the provision of real estate, brokerage, and related services, but now with all revenues now going to either Realmark Holdings LLC, or to herself personally. The license numbers are 0198267 and its affiliated license number 01515354. (Decl. of Robert Serafin ¶ 16) As for the seventh factor, "[t]he likelihood of expansion in product lines factor" is "relatively

unimportant where two companies [such as here] already compete" in common marketing channels. *Broolfzeld Commn's, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1044 (9th Cir. 1999).

The facts support a finding of bad faith and malicious intent. Defendants' use of the identical mark "Realmark" has no purpose other than to deceive the relevant public, and current and prospective Realmark Inc. customers into believing Realmark LLC and Realmark Inc. are one and the same entity (Decl. of Robert Serafin ¶ 17). When considered in this light, the eighth and final factor weighs heavily in Plaintiff's favor.

Although courts should not apply the foregoing factors "mechanically," the evidence underlying the three "most important" factors which should be "examin[ed] first" *(i.e.* [1] the similarity of the marks, [2] the relatedness of the goods or services, and [3] the use of common marketing channels) weighs heavily in favor of finding a high likelihood of confusion among consumers concerning similar services marked identically [as in the present case] in the parties' common market. *Broolfzeld v. West Coast,* 174 F.3d at 1055 n.16. In the present case all eight factors weigh heavily in Plaintiff's favor and none can be said to weigh decisively against it.

### 1.1 Defendant Ms. Serafin Is Personally Liable for the Infringing Acts

Defendant Ms. Serafin is personally liable for intentionally selecting the "Realmark" mark when forming Realmark Holdings LLC and using it to compete with Realmark Inc. which is likely to confuse the public and consumers. *See High Desert,* 92 F.3d at 823. Moreover, as President and CEO of Realmark Inc. and Managing Member and sole stockholder of Realmark Holdings LLC, Defendant Ms. Serafin is personally liable for the trademark infringements that she committed, directed or authorized. *See Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d at 1021 (9th Cir. 1985) (affirming personal liability of a corporation's president and sole stockholder for acts of unfair competition that he directed and authorized); *Playboy Enters., Inc. v. Chen,* No. CV 96-

3417 DDP (VAPx) 45 U.S.P.Q.2D 1400 1997 WL 829339 at *18 (C.D. Cal. 1997) (liability of sole shareholder, officer, and director of a corporation "in no way depends on piercing the corporate veil or alter ego. It is grounded rather on the Lanham Act's reference to 'any person' who violates elements of the statute.") (citing 3 J. McCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 25:24 (4th ed.)).

Realmark Inc. had a lengthy roster of clients with which it was in an economic relationship, before Ms. Serafin in concert with Doe Defendants created the new entity, and identically named it Realmark Holdings, LLC for the express purpose of deceiving Realmark Inc. clients, and subsequently depriving Realmark Inc. of all clients (and future business) by fraudulently inducing them to become clients of Realmark Holdings LLC or of Ms. Serafin.

These clients included the major multi-national corporation Krafton Inc. and its wholly owned subsidiary Striking Distance Studios which transferred all of their business and accounts from Realmark Inc. to Realmark Holdings LLC shortly after the incorporation of Realmark Holdings in December 2022. Realmark Inc received substantial revenue from Krafton/Striking Distance Studios before December 2022, and no revenues whatsoever since December 2022. (Decl. of Robert Serafin ¶ 18).

Between December 30, 2022, and June 27, 2023, Defendants Realmark Holdings LLC, and Ms. Serafin diverted a vast number of clients and transactions from Realmark Inc. to Realmark Holdings LLC. By her own admission on the Realmark Holdings LLC website (http://www.realmark-commercial.com) as of June 30, 2023, Realmark Holdings LLC  "*Clients and transactions include the following: Commercial, Office, Retail, Restaurant, Medical & Dental, Legal, Manufacturing, Personal Service, Non-Profit, Government, Educational Facilities, Political Action Committees, Venue, Industrial, Distribution Centers, Data Center & Technology, Film Production Studio & Sites, Wineries & Breweries, Parking Lots & Structures, Land,*

*Residential, Multi-Family, Low-income, Duplexes and Single Family*" (Dkt. No. 1 Exhibit B, and ¶ 17). These are clients, transactions, and resulting revenues, (which may conservatively be valued at tens of millions of dollars) that rightfully belonged to Realmark Inc.

It is undeniable that Realmark Holdings LLC, which had only been in existence for about 6 months at the time the above statements were made, could have amassed such an enormous number of transactions and diverse range of clients in only 6 months unless they were wrongfully diverted and converted from Realmark Inc.

### 1.2   State- Law Claims

The conduct described above - federal trademark infringement and federal unfair competition - constitutes violations of California Business & Professions Code § 17200 as well as common law unfair competition under California law. *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979). Plaintiff's state law claims similarly provide for injunctive relief. *See, e.g.,* CAL. BUS. & PROF. CODE § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). The analysis for Plaintiff's federal and state law causes of action focuses on the same central issue: likelihood of confusion. "As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis." *Grupo Gigante SA De CV v. Dallo & Co., Inc.,* 391 F.3d 1088, 1100 (9th Cir. 2004) (citation omitted); *Accuride Intern., Inc. v. Accuride Corp.,* 871 F.2d 1531, 1538 (9th Cir. 1989) ("[Plaintiffs] causes of action for statutory unfair competition under Cal. Bus. & Prof. Code §17200 and for common law unfair competition are similarly dependent upon a showing of likelihood of confusion."). The same arguments, evidence, and authorities relied upon above are equally applicable to Plaintiff's state law claims.

### 2. **Plaintiff is Entitled to Presumption of Irreparable Harm**

Plaintiff has suffered, and will continue to suffer irreparable harm without an injunction. Any act that inflicts "cognizable irreparable injury" is sufficient to support an injunction. *M.R. v. Dreyfus*, 697 F.3d 706, 728-729 (9th Cir. 2012). The irreparable harm need only be likely, not certain, to occur. *Michigan v. United States Army Corp. of Engineers*, 667 F.3d 765, 787-88 (7th Cir. 2011). With the implementation of the Trademark Modernization Act of 2020, plaintiffs who show a likelihood of success on the merits of a trademark infringement claim are presumed at the preliminary injunction stage to be suffering irreparable injury. 15 U.S.C. § 1116(a). Thus, in the instant case Plaintiff is presumed to be suffering irreparable injury.

The likelihood of "irreparable injury may be presumed from a showing of likelihood of success on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 877 (9th Cir. 2009) (quoting *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1038 (9th Cir. 2003). More specifically, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm." *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 n.3 (9th Cir. 1989).

In addition to the presumption of irreparable injury, damage to a company's reputation or goodwill are both sufficient to constitute irreparable injury. *United Healthcare Ins. Co. v. Advance- PCS*, 316 F.3d 737, 741 (8th Cir. 2002); *see also Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F.Supp.2d 1037, 1050 (N.D. Cal. 2004) (stating "[d]amage to a business' goodwill is typically an irreparable injury because it is difficult to calculate."); *AECOM Energy and Construction, Inv. v. Morrison Knudsen Corp.*, 748 Fed. Appx. 115, 119 (9th Cir. 2018) (affirming injunction where, without it, plaintiff "will lose control over the . . . brand for which it paid substantial consideration"). Because it is well established that consumer confusion and injury to business goodwill constitute irreparable harm, courts have long granted preliminary injunctions

in trademark cases. *See, e.g.*, *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1012-14 (C.D. Cal. 2011). Here, the likelihood of consumer confusion and injury to goodwill is sufficient to demonstrate irreparable harm.

Finally, in addition to the clear impact on consumers, the confusion of "vendors, suppliers, potential employees, investors, and similar groups of non-consumers" is also a source of irreparable harm. *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190,1214 n.9 (9th Cir. 2012). Plaintiff has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, and goodwill flowing from, and likely to continue to flow from Defendants' infringing activities. Without a preliminary injunction, the immeasurable irreparable harm will continue.

### 2.1    A Preliminary Injunction Will Preserve the Status Quo

One of the purposes of an interim injunction is to preserve the status quo. *Chalkv. United States Dist. Ct.,* 840 F.2d 701,704 (9th Cir. 1988). The injunction here will serve to preserve the status quo *ante litem* - i.e., the last uncontested status which preceded the pending controversy. *GoTo. com v. Disney*, 202 F.3d at 1210 ("The status quo *ante litem* refers not simply to any situation before the filing of the lawsuit, but instead to "the last uncontested status which preceded the pending controversy."') (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 196.3)).

### 3.    The Public Interest Strongly Favors an Injunction

The use of the "Realmark" mark by Defendants is entirely purposed on causing consumer confusion. The public interest is best served by enjoining Defendants' infringing activities and unfair competition. It is not in the public's interest to reward Defendants' disregard of existing trademarks, or to overlook their unfair competition. The public interest is best served by "vindicating intellectual property rights, and [] prohibiting unfair competition." *Niantic, Inc. v.*

*Global++*, 2019 WL 8333451, *9 (N.D. Cal. Sept. 26, 2019). In trademark cases, "the usual public interest concern . . . [is] avoiding confusion to consumers." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

An injunction is in the public interest because it will prevent further infringing conduct and consumer confusion. *See Am. Rena Int'l Corp. v. SisJoyce Int'l Co. Ltd.*, 534 F. App'x 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."); *Restoration Hardware, Inc v. Sichuan Wei Li Tan Xiz Network Tech. Co. Ltd.* No. 22- cv-03054-JSC, 2022 WL 4596622 at *2 (N.D. Cal. July 11, 2022) (finding that "an injunction is in the public interest because it will prevent further infringing conduct and protect the public from counterfeit products.").

### 4. The Balance of Equities Strongly Favors an Injunction

In considering an injunction, a court evaluates the degree of harm to each party if the injunction is improperly granted or denied. Here, the balance of equities strongly favors granting Plaintiff its requested relief because he seeks "no more than requir[ing] Defendant to comply with . . . laws." *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016).

Plaintiff stands to suffer further substantial harm as Defendants' infringement of the "Realmark" mark continues. (Decl. of Robert Serafin ¶ 19). Defendants will suffer no harm from being unable to illegally infringe the "Realmark" mark or to continue their unfair competition by continuing to use the "Realmark" mark, and the California Department of Real Estate license numbers 01515354 and 01982671 (under which Realmark Inc, has continuously operated since 2014) for all real estate, brokerage, and related services performed by Realmark Holdings LLC or

by Ms. Serafin. Any harm that Defendants may suffer pales when compared to the past, current, and future damages Plaintiff has suffered, and will suffer because of the infringement of the trademark and brand. The requested preliminary injunction would require that Defendants simply observe their already existing obligations to not infringe the "Realmark" mark or continue their unfair competition. A balancing of the hardships favors injunctive relief.

**C.    A BOND SHOULD NOT BE REQUIRED**

Under Federal Rule of Civil Procedure 65(c), the Court has wide discretion in setting a bond as a condition to preliminary injunctive relief, including the option of not requiring a bond at all. *See, e.g., Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995) (affirming district court's refusal to require any bond based on "the strength of [plaintiffs] case and the strong public interest involved"). See also *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, 692 F. App'x 366, 369 (9th Cir. 2017) (quotation marks omitted). Plaintiff's high likelihood of success on the merits as demonstrated above, and Defendants' flagrant and knowing misconduct weigh against requiring a bond. Further, a bond requirement would invoke an undue hardship on Plaintiff who has through Defendants' actions been deprived of assets, income, and resources (Decl. of Robert Serafin ¶ 19).

## IV.    CONCLUSION

Based on the foregoing, and because Plaintiff has satisfied the requirements for a preliminary injunction for his trademark and unfair competition claims, Plaintiff respectfully requests this Court grant its Motion for a Preliminary Injunction in the form of the Proposed Order accompanying this Motion.

Dated January 15, 2024                                   _____
                                                                              Robert Serafin, PRO SE

# PROOF OF SERVICE

I am over the age of eighteen (18) years. My address is *460 Center Street, No. 6995, Moraga, CA 94570.* On January 15, 2024, I served the following document(s) listed below to **Stephen Fuerch & AND James Schwarz** as indicated below:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[ ] BY E-MAIL**

The above-referenced document was transmitted to the addressee(s) at the e-mail addresses listed herein, which are their most recently known e-mail addresses or e-mail addresses of record in this action. I did not receive, within reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Stephen M. Fuerch:    steve@fuerchlegal.com
James Schwartz:         jgslaw48@gmail.com

**[ ] BY U.S. MAIL**

Stephen M. Fuerch & James Schwartz at:
7901 Stoneridge Drive, Suite 506
Pleasanton, CA 94588

**[X] CM/ECF**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
ROBERT SERAFIN