Robert Serafin, PRO SE
460 Center Street, # 6995
Moraga, CA 94570
T: (415) 350-9900
bobby8020@yahoo.com

UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

| | |
|---|---|
| ROBERT SERAFIN<br><br>*Plaintiff*<br><br>v.<br><br>REALMARK HOLDINGS, LLC,<br>a California Limited Liability Company;<br>MADELINE SERAFIN, an individual;<br>REALMARK INC., a California "C"<br>Corporation;<br><br>DOES 1-10, inclusive<br><br><br>*Defendants,* | CASE NO. 5:23-cv-03275 PCP<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO A PRELIMINARY INJUCTION**<br><br>Date:  February 22, 2024<br>Time: 10AM<br>Court Room: 8 4th Floor<br>Judge: Hon. P. Casey Pitts<br>Date Action Filed: June 30, 2023<br>Trial Date: None Assigned |

**I.   DEFENDANTS DO NOT DENY TRADEMARK INFRINGEMENT**

In their opposition to Plaintiff's Motion for a Preliminary Injunction Defendants Realmark Holdings LLC or Ms. Serafin do not deny she infringed the "Realmark" mark (from Realmark Inc.), or that she incorporated and established the identically named new entity Realmark Holdings LLC. Instead Ms. Serafin tries to explain away the infringement by implausibly, and without any evidence, claiming: (1) she is the sole shareholder in Realmark Inc. and (2) she incorporated Realmark Holdings LLC as a "*holding company set up for liabilities to protect Realmark Inc.*" (Dkt No. 55 at 4:23-24). The meaning of this statement is unclear. It could mean either Ms.

Serafin admits establishing Realmark Holdings LLC to manipulate the assets and liabilities between the corporate entities so as to concentrate the assets in one and the liabilities in another, as Plaintiff has alleged, or it could mean Ms. Serafin established Realmark Holdings LLC to protect her personal assets from Realmark's Inc. debts and liabilities. Since one of the functions of a C corporation (like Realmark Inc.) is to protect its shareholders personal assets from corporate debts and liabilities, Ms. Serafin's explanation for why she incorporated Realmark Holdings LLC (thereby infringing the "Realmark" mark) is invalid and meritless.

## II. DEFENDANTS FAIL TO DEMONSTRATE PLAINTIFF NOT LIKELY TO SUCCEED ON MERITS OR NOT ENTITLED TO PRESUMPTION OF IRREPARBLE HARM

Defendants argue Plaintiff is not likely to succeed on the merits because he lacks standing to assert a claim under Section 43(a) of the Lanham Act (as they did in their Motion to Dismiss (Dkt. No. 5)). This Court has already settled the standing issue and determined Plaintiff meets the standard under Halicki Films, LLC v. Sanderson Sales & Mktg., 547 F.3d 1213, 1225 (9th Cir. 2008) to pursue its trademark infringement claims.

Beyond their already settled claim on standing, Defendants offer no argument, analysis, or legal support as to why Plaintiff is not likely to succeed on the merits. Crucially, they also do not dispute that the "Realmark" mark is valid and protectable, or that Defendants' use of the "Realmark" mark is likely to cause confusion.

Finally, Defendants do not dispute any of Plaintiff's claims in section B (1)(2) of its Motion for a Preliminary Injunction which provides legal analysis, support and arguments for why Plaintiff is likely to succeed on the merits. Defendants' entire position on the merits is "*Plaintiff is not likely to succeed on merits, as he has no standing to bring this motion*" (Dkt No. 55 at 2:10).

### III. DEFENDANTS FAIL TO DEMONSTRATE BALANCE OF EQUITIES TIPS IN DEFENDNATS' FAVOR OR THAT AN INJUCTION IS NOT IN THE PUBLIC INTEREST

Defendants do not dispute any of Plaintiff's claims in section B (3)(4) of its Motion for a Preliminary Injunction. Plaintiff's legal analysis, support and arguments for why the public interest favors an injunction and how the balance of equities strongly favors an injunction are unopposed. Further, Defendants offer no argument, analysis, or legal support of their own as to why or how the public interest disfavors an injunction, or that the balance of equities tips in their favor.

### IV. DEFENDANTS' OPPOSITION ARE BASED ON MERITLESS PERSONAL ATTACKS AND FALSE CLAIMS ABOUT THE REALMARK ENTITIES

Defendants opposition to the issuance of a Preliminary Injunction is based primarily on meritless and unfounded personal attacks against Plaintiff (and which Plaintiff denies). In addition, Defendants opposition is based on false (and irrelevant) claims about Realmark Inc. and Realmark Holdings LLC which if true, would be very easy to substantiate with supporting documents. For example, Defendants claim *Ms. Serafin was, and has always been the sole shareholder of stock in Realmark, Inc.* (Dkt No. 55 at 3:10-12). If this was true, proving it would be a simple matter by providing the corporate records to substantiate the claim. Defendants do not provide articles of incorporation, current, historical or original bylaws, corporate resolutions adopted by the shareholders or board of directors, records of actions taken by shareholders, or any other corporate records of any kind.

Instead, the only records Defendants do produce in their opposition to the Preliminary Injunction is a copy of a restraining order Ms. Serafin obtained against Plaintiff two years ago; a copy of a dividend distribution check for $90,000 from Realmark Inc. to Plaintiff (signed by Plaintiff as Corporate Treasurer and approved by the Realmark Inc, CEO; a form letter dated September 24,

2014, from the California Secretary of State responding to a question about name availability for Realmark Inc..; and an image of the current restricted home page for "Realmark".

As alleged in the Complaint, in July 2021, Ms. Serafin locked out Plaintiff from access to all digital and physical Realmark Inc. systems, files, records, and financial accounts. Therefore, factual information is peculiarly within Defendant's control and knowledge. To date Plaintiff has submitted three separate formal requests for inspection of Realmark Inc. corporate records to its CEO, and to the Realmark Inc. attorneys of record pursuant to the provisions of Chapter 16 of the California Corporations Code; on August 10, 2022, on October 11, 2023, and on November 2, 2023 (See Request for Judicial Notice Exhibit A Dkt. No. 56-1 ). Ms. Serafin or the Realmark Inc. attorneys did not respond to any of Plaintiff's requests and produced no records as they were legally required to produce. Now Defendants attempt to take advantage of their own wrong in violation of Cal. Civ. Code § 3517 in their opposition to the Preliminary Injuction. Defendants objections to Plaintiff's Declaration fails for the same reason, and for the reasons set forth below.

**A. Defendant Claims It Made No Substantial Changes to Realmark Inc Website**

In their opposition Defendants state "*No substantial website changes to the website known as Realmark-commercial.com have been made since 2016*" (Dkt No. 55 at 4:3-4). Shortly after the present lawsuit was filed, Defendants in an effort to destroy evidence, improperly restricted access to the Realmark Inc. website (http://www.realmark-commercial.com) which they usurped on or about January 2023, shortly after the formation of Realmark Holdings LLC. Despite Defendants' attempt to destroy and conceal evidence, records are available showing the drastic changes to subject website. The Request for Judicial Notice Exhibit B (Dkt. No. 56-1 ) presents the before

and after changes to the website. When comparing the original Realmark Inc. webpage and the usurped Realmark Holdings LLC webpage it is obvious that they are vastly different except for the mark "Realmark". Incredibly, Ms. Serafin's personal cell number now appears prominently under the Realmark name and new logo. This phone number was never used by, or associated with, Realmark Inc. Exhibit B also shows the Company Contact page which makes it clear the only way contact "Realmark" is through Ms. Serafin's personal cell phone, the usurped website http://www.realmark-commercial.com, or a visit to the physical offices located at 281 Hartz Avenue in Danville, California (now branded as the Realmark Building). And still Defendants boldly claim "*No substantial website changes to the website known as Realmark-commercial.com have been made since 2016*" (Dkt No. 55 at 4:3-4).

### B. Defendant Claims Realmark Inc. Revenues of Under $500,000 Over 10 Years

Defendants claim Realmark Inc. "*has never made millions of dollars*" and "*in ten years it has barely made $500,00*" (Dkt No. 55 at 4:27-28). They present no bank records, balance sheets, Income statements, tax returns, or any other documents to support their statements. Incongruently, they admit to the existence of a long-term lucrative contract with the multi-national corporation Krafton Inc., and to the fact that Realmark Inc. has been profitable in every single year of its 10-year existence (Dkt No. 55 at 5:7). Realmark Inc. is headquartered in a large commercial building located at 281 Hartz Avenue in a highly desirable and expensive location in Danville, California.

Because of Defendants' failure to comply with Plaintiff's three requests for corporate records pursuant to Chapter 16 the California Corporations Code, factual information is peculiarly within Defendant's control and knowledge, and Plaintiff is unaware of the lease costs for the commercial building housing Realmark Inc. and Realmark Holdings LLC. However, comparable properties typically lease in the same area for between $12,000 and $20,000 per month. In addition,

Realmark Inc. or Realmark Holdings LLC (it is unclear which) have paid for expensive naming and primary signage rights to the building located at 281 Hartz Avenue, in Danville, California. Currently the name "Realmark" is emblazoned very prominently across the top of the building which is located in a very busy highly trafficked commercial and retail area (See Request for Judicial Notice Exhibit C Dkt. No. 56-1 ). This prominent marquee serves as a conspicuous physical example of how Defendants' use of the mark "Realmark" is likely to cause confusion. Does the marquee refer to Realmark Inc. or Realmark Holdings LLC?

The website (http://www.realmark-commercial.com), claimed as of June 30, 2023, Realmark Holdings LLC  "Clients and transactions include the following: Commercial, Office, Retail, Restaurant, Medical & Dental, Legal, Manufacturing, Personal Service, Non-Profit, Government, Educational Facilities, Political Action Committees, Venue, Industrial, Distribution Centers, Data Center & Technology, Film Production Studio & Sites, Wineries & Breweries, Parking Lots & Structures, Land, Residential, Multi-Family, Low-income, Duplexes and Single Family" (See Request for Judicial Notice Exhibit D Dkt. No. 56-1 ). These clients, transactions, and resulting business and revenues, (which may conservatively be valued at tens of millions of dollars and rightfully belonged to Realmark Inc.) further refute Defendants' unsupported statement that Realmark Inc. "*in ten years it has barely made $500,00*". Realmark Inc. and now Realmark Holdings LLC have generated enormous unquantified revenues anticipated to be in the tens of millions of dollars over the last 10 years.

Finally, Ms. Serafin's established record of personal spending of diverted Realmark entities revenues contradict Defendants' claims. Ms. Serafin's spending includes an estimated $500,000 in legal fees; annual credit card expenditures of over $150,000 (which she claims are "business

expenses"); and leasing a luxurious personal residence at close to $10,0000 per month to name a few, all on her claimed annual income of less than $160,000.

### C. Realmark Inc. Licensing

Realmark Inc, has since 2014 continuously operated under the California Department of Real Estate license numbers 01515354 and 01982671. License number 01982671 requires, and is based on license number 01515354. License numbers 01515354 was fraudulently obtained by Ms. Serafin, and subsequently used as the qualifying license for the issuance of License number 01982671. The latter is not valid without the former. Realmark Inc. has generated revenues under both licenses. The business conducted by the Realmark entities includes brokerage activities which require a license, and a range of services which do not require a license, including Construction Management, Project Management, Consulting, Mediation and related services. Ms. Serafin has never been selected as, or served as an expert witness because of her extreme credibility problems and the publicly available records of the history of her misconduct.

### D. Plaintiff's Role at Realmark Inc.

Defendants state "Plaintiff was not an employee of Realmark Inc. and did not perform any services or work on its behalf" (Dkt No. 55 at 4:27-28). Then immediately contradicting themselves in the very same paragraph they admit Plaintiff served as the Realmark Inc. Secretary and Treasurer from 2014 until his improper removal by Ms. Serafin in 2020. Realmark Inc. was jointly incorporated by Plaintiff and Ms. Serafin in 2014, authorizing 2,000 single class shares with a par value of $100 each. Ms. Serafin and Plaintiff each held, and continue to hold 1,000 shares of Realmark Inc. common stock. A substantial part Realmark Inc. services includes construction and facilities management. Ms. Serafin did not have any expertise or knowledge in

these disciplines. Plaintiff performed all services related to construction and facilities management for Realmark Inc. between 2014 until his removal by Ms. Serafin in 2020.

## V. A PRELIMINARY INJUNCTION WILL PRESERVE THE STATUS QUO

One of the purposes of an interim injunction is to preserve the status quo. Chalkv. United States Dist. Ct., 840 F.2d 701,704 (9th Cir. 1988). A preliminary injunction will "preserve the status quo without adjudicating the merits," and, as such, a court may grant such relief where doing so would "preserve the relative positions of the parties until a trial on the merits can be held." Bracco v. Lackner, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978).

Defendants' response to Plaintiff's request for Preliminary injunction underscores and reinforces the reasons why a Preliminary Injunction is warranted and necessary. Defendants do not dispute, or fail to respond to the substance of Plaintiff's claims in its motion for a Preliminary Injunction. They fail to cite any relevant legal authority in support of their opposition to the motion, and do not provide sufficient law or analysis to justify the denial of Plaintiff's motion.

Instead, Defendants oppose the motion by relying on meritless and unfounded personal attacks against Plaintiff (Plaintiff denies and disputes each and every allegation made against him in Defendants' opposition);  and on false (and irrelevant) claims about Realmark Inc. and Realmark Holdings which if true, would be very easy to substantiate with supporting documents. However Defendants produce no documents to support their claims. The documents they do produce to support their collective Realmark entities claim are a copy of a 2-year-old restraining order, and a form letter related to naming Realmark Inc. before its incorporation.

Ms. Serafin has already admitted to manufacturing a fictitious person to serve as an employment refence, and for her various other nefarious purposes (Dkt No. 53 at 4:22-23). She

8
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO A PRELIMINARY INJUNCTION

further admits claiming she was totally disabled and receiving disability payments (Dkt No. 53 at 4:19-20), which Krafton Inc. records will prove was disability fraud because she was working for Realmark Inc. full time at the Krafton Inc. project site in San Ramon, California while claiming to be fully "disabled". Accordingly, the manufacture of false statements in Defendants' opposition is a small matter for a Defendant willing to go the extreme of manufacturing a fictitious person.

According to Defendants Realmark Inc. "*has no substantial goodwill or recognition*" and the "*company does not make a substantial income*" (Dkt No. 55 at 3:22-23). They claim Realmark Inc. is a minor concern which Ms. Serafin runs singlehandedly in her spare time from home. They claim Realmark Holdings LLC is merely a shell corporation created by Ms. Serafin as a "*holding company set up for liabilities to protect Realmark Inc.*" (Dkt No. 55 at 4:23-24). Finally, Defendants claim Plaintiff's Proposed order is unclear about exactly what conduct is proscribed (An ordinary person reading Plaintiff's Proposed Order will immediately recognize this is plainly not the case).

None of Defendnats' forgoing claims are true. The Realmark entities maintain fully staffed offices, with regular business hours, in a large commercial building in an expensive and desirable community. Discovery will show the Realmark entities make extensive use of independent contractors, and contracting firms in addition to friends and relatives of Ms. Serafin. They earn millions of dollars in revenue which Ms. Serafin diverts through a complicated and murky scheme involving herself and her relatives.

Because of Defendants' failure to comply with Plaintiff's three requests for corporate records pursuant to Chapter 16 the California Corporations Code, factual information and supporting documentation remains peculiarly within Defendant's control and knowledge.

## VI.  CONCLUSION

Plaintiff is entitled to temporary injunctive relief to preserve the status quo pending resolution of this case on the merits. Based on the foregoing, and because Plaintiff has satisfied the requirements for a preliminary injunction for his trademark and unfair competition claims, Plaintiff respectfully requests this Court grant its Motion for a Preliminary Injunction in the form of the Proposed Order accompanying the Motion.

Dated February 5, 2024                     Robert Serafin, PRO SE